UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ROBERTA SCHAAR, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>STATE OF MISSOURI, )<br>DEPARTMENT OF CORRECTIONS, )<br>)<br>Defendant. ) | Case No. 2:06CV65MLM |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion to Dismiss filed by Defendant State of Missouri, Department of Corrections ("Defendant" or "Defendant State of Missouri DOC"). Doc. 5. Plaintiff Roberta Scharr ("Plaintiff") filed a Response. Doc. 11. Defendant did not file a Reply. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 4.

## BACKGROUND

1. On August 16, 2006, Plaintiff, who was a corrections officer at Missouri's Northwest Correctional Center in Bowling Green, filed a petition in the Circuit Court of Pike County, Missouri, alleging sexual harassment and retaliation in violation of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § § 213.055, 213.070, against the State of Missouri and Larry Crawford, Director of the Missouri Department of Corrections ("DOC") and assault and battery against Michael Schultz. Doc. 8, Ex. A.

On November 16, 2006, Plaintiff filed the Complaint in the matter under consideration. In Count I of her Complaint Plaintiff alleges sexual harassment and retaliation in violation of Title VII

1

of the Civil Rights Act, 28 U.S.C. § 2000e et seq., against Defendant, the State of Missouri, DOC. Doc. 1.

By Order, dated November 20, 2006, the State court dismissed Larry Crawford as a defendant, denied a motion to sever filed by the State of Missouri and Larry Crawford, denied a motion filed by Schultz to dismiss him, and granted Plaintiff's motion for a change of venue to Lincoln County. Def. Ex. C.

On December 4, 2006, Plaintiff filed an amended petition in State court in which she alleged sexual harassment and retaliation against the State of Missouri in violation of the MHRA and assault and battery against Schultz, who was a corrections officer at the Northeast Correctional Center. Def. Ex. D.

In the pending Motion to Dismiss for Lack of Jurisdiction or, in the alternative, to Stay, Defendant contends that this court should abstain from asserting jurisdiction because the facts alleged in Plaintiff's State cause of action for sexual harassment and retaliation are identical to those alleged in her Complaint filed in this court and because Plaintiff seeks the same relief in both causes of action. In support of this position Defendant relies on Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976). Plaintiff responds that abstention is appropriate only where extraordinary factors are present; that those factors are not present in the matter under consideration; and that, therefore, abstention is not appropriate. Plaintiff further argues that the MHRA and Title VII are not identical acts and create different causes of action and that the "MHRA is broader than Title VII in some ways and in other ways is more restrictive." Doc. 11 at 3.

## APPLICABLE LEGAL FRAMEWORK

1.  "Generally, a federal district court must exercise its jurisdiction over a claim unless there are 'exceptional circumstances' for not doing so." Scottsdale Ins. Co. v. DETCO Indus.,Inc., 426 F.3d

994, 996 (8th Cir. 2005) (citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16-19 (1983); Colorado River, 424 U.S. at 818).

2. The doctrine of abstention provides that "a district court may decline to exercise or postpone the exercise of its jurisdiction" in "extraordinary" or "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959). In Colorado River, 424 U.S. at 814-16, a declaratory judgment action, the Supreme Court held that abstention is appropriate (a) "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law"; (b) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and (c) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." (citations omitted). The Court acknowledged that:

> Although [a] case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of *"(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."* Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200, 203 (1952). See Columbia Plaza Corp. v. Security National Bank, 173 U.S.App.D.C. 403, 525 F.2d 620 (1975). Generally, as between state and federal courts, the rule is that *"the pendency of an action in the state court* is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." McClellan v. Carland, supra, 217 U.S. at 282, 30 S.Ct. at 505, 54 L.Ed., at 767. See Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., supra; Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937); Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153, 158 (1936). This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal

courts to exercise the jurisdiction given them. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 415, 84 S.Ct. 1, 464, 11 L.Ed.2d 440, 444 (1964); McClellan v. Carland, supra, 217 U.S., at 281, 30 S.Ct. at 504, 54 L.Ed. at 766; Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821) (dictum). Given this obligation, and the absence of *weightier considerations of constitutional adjudication* and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

... In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); the desirability of avoiding piecemeal litigation, cf. Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, 1625 (1942); and the order in which jurisdiction was obtained by the concurrent forums, Pacific Live Stock Co. v. Oregon Water Bd., 241 U.S. 440, 447, 36 S.Ct. 637, 640, 60 L.Ed. 1084, 1096 (1916). No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. See Landis v. North American Co., supra, 299 U.S. at 254-255, 57 S.Ct. at 165-166, 81 L.Ed. at 158. Only the clearest of justifications will warrant dismissal.

Id. at 817-19 (emphasis added).

3. Wilton v. Seven Falls Co., 515 U.S. 277, 282-90 (1995), establishes "a broad discretionary standard governing a district court's determination whether to exercise jurisdiction in declaratory judgment actions in which there are parallel state court proceedings. Scottsdale Ins. Co. v. Detco Indus., Inc., 426 F.3d 994, 997 (8th Cir. 2005). The standard of Wilton departs from the "exceptional circumstances standard established in Colorado River [] because '[d]istinct features of the Declaratory Judgment Act ... justify a standard vesting district courts with greater discretion in declaratory judgment actions.'" Id. "Suits are parallel if 'substantially the same parties litigate substantially the same issues in different forums.'" Scottsdale, 426 F.3d at 997 (quoting New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073 (4th Cir.1991)).

4

4. Courts have limited the doctrine expressed in Colorado River to actions for declaratory judgment. See e.g., United States Fid. and Guar. Co. v. Murphy Oil USA, Inc., 21 F.3d 259 (8th Cir. 1994). However, the Supreme Court held in Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 16 (1983), that:

> [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case. Colorado River itself illustrates this principle in operation.

5. In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court "espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). The policies underlying Younger abstention are as follows:

> The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Id., at 44, 91 S.Ct., at 750. *Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.*
>
> The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); Huffman v. Pursue, Ltd., 420 U.S. 592, 604-605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in Huffman, supra. Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." Moore, 442 U.S., at 426, 99 S.Ct., at 2379. "*[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims ....*" Id., at 430, 99 S.Ct.,

at 2380. See also Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

Id. at 31-32 (emphasis added).

The Eighth Circuit holds that "Younger abstention prohibits a federal court from interfering in pending state civil cases where (1) there is an ongoing state proceeding (2) that implicates important state interests and (3) there is an adequate opportunity in the state proceeding to raise the federal issues. Silverman v. Silverman, 267 F.3d 788, 792 (8th Cir. 2001) (citing Middlesex County, 457 U.S. at 432). Authority does not limit the scope of Younger to declaratory judgment actions. See e.g., Middlesex County, 457 U.S. 423; Silverman, 267 F.3d 788.

6. Missouri has a policy of precluding the same parties or those in privity from relitigating a cause of action. Hollida v. Hollida, 990 S.W.3d 550, 554-55 (Mo. Ct. App. 2006) (holding that Missouri courts created the doctrine of res judicata "to inhibit a multiplicity of lawsuits") (citing 66, Inc. v. Crestwood Commons Redevelopment Corp., 998 S.W.2d 32, 42 (Mo. 1999) (en banc)). See also Misishia v. St. John's Mercy Health Sys., 457 F.3d 800 (8th Cir. 2006). Missouri also has a policy which precludes the splitting of a single cause of action. Roemann v. Roto-Die, Inc., 276 F.3d 393, 397 (8th Cir. 2002). Further, under Missouri law "the test for determining whether a cause of action is single and cannot be split is":

> 1) whether separate actions brought arise out of the same act, contract or transaction; 2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. The word "transaction" has a broad meaning. It has been defined as the aggregate of all the circumstances which constitute the foundation for a claim. It also includes all of the facts and circumstances out of which an injury arose.

Id. (citing King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 501 (Mo.1991) (quoting Burke v. Doerflinger, 663 S.W.2d 405, 407 (Mo. Ct. App.1983)).

Likewise, federal law embodies policy which precludes splitting a cause of action. Friez v. First American Bank & Trust of Minot, 324 F.3d 580, 581 (8th Cir. 2003) ("Res judicata prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate lawsuits."). See also Bankers Life & Cas. Co. v. Kirtley, 338 F.2d 1006 (8th Cir. 1964); Guettel v. United States, 95 F.2d 229 (8th Cir. 1938).

7. The standards governing Title VII actions are the same standards which should be employed in determining the merit of claims brought pursuant to the MHRA. See Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 715 (8th Cir. 2000); Smith v. St. Louis Univ., 109 F.3d 1261, 1264 n.2 (8th Cir. 1997); Tart v. Hill Behan Lumber Co., 31 F.2d 668, 671 (8th Cir. 1994). "Decisions under the various federal employment discrimination statutes are applicable and authoritative under the MHRA as well as federal law." Lane v. Ground Round, Inc., 775 F. Supp. 1219, 1223 (E.D. Mo. 1991). See also Heintzelman v. Runyon, 120 F.3d 143 n.4 (8th Cir. 1997); Marks v. Sch. Dist. of Kansas City, Missouri, 941 F. Supp. 886, 892 (W.D. Mo. 1996).

In particular, where a plaintiff claims sexual harassment in violation of both Title VII and the MHRA, decisions under federal employment discrimination statutes are "authoritative under the MHRA as well as federal law." Lane, 775 F. Supp. at 1223 (citing Midstate Oil v. Missouri Comm'n on Human Rights, 679 S.W.2d 842 (Mo. 1984) (en banc) ; Missouri Comm'n on Human Rights v. City of Sikeston, 769 S.W.2d 798 (Mo. Ct. App.1989)). Likewise, upon rejecting a claim that Missouri courts define retaliation under the MHRA more broadly than retaliation under Title VII the Eighth Circuit held that:

> [T]here is effectively "[no] difference between proof that there was a causal connection between the employee's protected activity and adverse employment action, the remaining elements of a Title VII retaliation claim, and proof that 'as a direct result [of protected activity], [the employee] suffer[ed] any damages due to an act of reprisal,' the second element of a retaliation claim under the MHRA." Cross v.

Cleaver, 142 F.3d 1059, 1076 (8th Cir.1998) (quoting Keeney, 911 S.W.2d at 625-26).

Buettner, 216 F.3d at 715 n.8.

8. Mo. Rev. Stat. § 213.111(2) establishes the relief available under the MHRA and states as follows:

> The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual and **punitive damages**, and may award court costs and reasonable attorney fees to the prevailing party, other than a state agency or commission or a local commission; except that, a prevailing respondent may be awarded court costs and reasonable attorney fees only upon a showing that the case is without foundation.

(emphasis added).

The Missouri appellate court has recently held, in Brady v. Curators of Univ. of Missouri, 2006 WL 3408210 (Mo. Ct. App. Nov. 28, 2006), that punitive damages may be recovered under the MHRA against an employer who is a state or a political subdivision.[1] The Missouri appellate court based this finding in Brady on the fact that the MHRA, which provides for punitive as well as actual

---

[1] The Eighth Circuit has addressed the standard for punitive damages under the MHRA as follows:

> The standard under Missouri law for punitive damages requires "conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." Burnett v. Griffith, 769 S.W.2d 780, 789 (Mo.1989) (en banc) (quoting the Restatement (Second) of Torts § 908(2) (1979)). The requisite level of recklessness or outrageousness can be inferred from management's participation in the discriminatory conduct. Compare Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1062 (8th Cir.1992) (awarding punitive damages where a supervisor disciplined a female employee more harshly than male employees who violated similar rules), with Varner, 94 F.3d at 1214 (denying punitive damages where only one co-worker who was not a supervisor or manager harassed the plaintiff).

Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 575 (8th Cir. 1997).

damages against an employer who violates the MHRA, specifically includes the "state or any political or civil subdivision thereof" in its definition of "employer." 2006 WL 3408210 at *5. Rehearing and/or Transfer to the Missouri Supreme Court was denied in Brady on January 18, 2007, and Transfer was denied on February 27, 2007. The Missouri Supreme Court holds that there is a State constitutional right to have a cause of action under the MHRA tried by a jury. State ex rel. Diehl v. O'Malley, 95 S.W.3d 82 (Mo. 2003). [2]

9. Title VII, 42 U.S.C. § 2000e-5(g)(1), the enforcement section of Title VII, provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. §§1981a(a)(1) and (b)(1)-(2) provide for damages in cases of intentional employment discrimination under Title VII.[3] These provisions specifically state that a plaintiff can

---

[2] Previously authority was mixed regarding the issue of whether punitive damages were recoverable under the MHRA against a municipality or government entity. See e.g., Kline v. City of Kansas City, Missouri, Fire Department, 175 F.3d 660 (8th Cir. 1999) (rejecting the plaintiffs' claim that their employer, a Missouri governmental entity, was subject to punitive damages under the MHRA; Fortner v. City of Archie, Missouri, 70 F. Supp.2d 1028 (W.D. Mo. 1999) (holding that the damage provision of the MHRA providing for punitive damages applies to all employers as defined by the MHRA; that governmental entities are employers within the meaning of the MHRA; and that, therefore, governmental entities are subject to punitive damages under the MHRA).

[3] 42 U.S.C. § 1981a(a)(1) states:

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent

recover compensatory and punitive damages with *the exception that a plaintiff cannot recover punitive damages from a government, government, or political subdivision*. Additionally 42 U.S.C. § 1981a(b)(1) states that under Title VII total compensatory and punitive damages are limited based on the number of persons employed by the employer. §1981a(b)(3)(A)-(D).[4] Compensatory damages "include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." § 1981a(b)(3). A party in a Title VII action may demand a jury trial. §1981a(c).

---

> who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.
>
> 42 U.S.C. § 1981a(b)(1) states:
>
> A complaining party may recover **punitive damages** under this section against a respondent (**other than a government**, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. (emphasis added)

[4] 42 U.S.C. § 1981a(b)(3) states:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party–
>
> ...
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

**DISCUSSION**

As stated by the Supreme Court in Cohen Memorial Hospital, 460 U.S. at 16, this court must not apply a "mechanical checklist" upon determining whether abstention is appropriate in the matter under consideration. Rather, the court must balance the factors relevant to a determination as to whether abstention is appropriate giving greater weight to the factors which rely more heavily in favor of exercising jurisdiction. See id. While Colorado River addresses abstention where the underlying cause of action is one for declaratory judgment and while the matter under consideration is not a declaratory judgment action, the policy concerns expressed in Colorado River are nevertheless relevant in the matter under consideration. See Cohen Mem. Hosp., 460 U.S. at 16.

A relevant factor in favor of abstention according to Colorado River, 424 U.S. at 819, is that the State court first obtained jurisdiction. Likewise, the presence of ongoing State proceedings is relevant as to whether abstention is appropriate according to Younger. See Silverman, 267 F.3d at 792. Abstention under such circumstances is a manifestation of the respect due to State courts by federal courts. See Younger, 401 U.S. at 31. In the matter under consideration, Plaintiff filed suit in State court approximately three months prior to her filing a cause of action in federal court; she filed her State cause of action in August 2006 while she did not file her federal Complaint until November 2006. Plaintiff's federal cause of action has not proceeded beyond the initial stage of pleading while in State court Plaintiff has filed an amended petition and the court has dismissed one party, denied a motion filed by Schultz to dismiss him, denied a motion to sever, and granted Plaintiff's motion for a change of venue.

A second factor in favor of abstention, and perhaps the most significant, is that Missouri courts will adequately protect Plaintiff's federal constitutional rights and will afford her an adequate opportunity to raise her constitutional claims; Missouri courts will provide for "proper constitutional

11

adjudication." Colorado River, 424 U.S. at 816. See also Cohen, 460 U.S. at 16; Younger, 401 U.S. at 31; Silverman, 267 F.3d at 792. Missouri courts have adopted federal law in interpreting causes of action under Title VII. See Swyers v. Thermal Science, Inc., 887 S.W.2d 655, 656, (Mo. Ct. App. 1994). Likewise, federal courts acknowledge that employment discrimination statutes are "authoritative under the MHRA as well as federal law." Lane, 775 F. Supp. at 1223. See also Buettner, 216 F.3d at 715; Smith, 109 F.3d at 1264 n.2; Tart, 31 F.3d at 671. Federal courts have specifically rejected any claim that the burden of proof under State law differs from that under State law in Title VII cases. See Buettner, 216 F.3d at 715 n.8. Indeed, Plaintiff could have alleged claims under Title VII in her State cause of action. Further, the relief available under Title VII is no less than the relief available under the MHRA. In fact, Plaintiff may be able to recover a greater sum under the MHRA than she can recover under Title VII. She cannot recover punitive damages under Title VII against her governmental employer while according to Brady, 2006 WL 3408219, the MHRA permits such recovery. Moreover, Title VII limits compensatory damages.[5] See 42 U.S.C. § 1981a(b)(3).

Third, consistent with the concern expressed by the Court in Coloardo River, 424 U.S. at 816, abstention in the matter under consideration will result in "'(w)ise judicial administration" and "conservation of judicial resources." Unquestionably, were Plaintiff to litigate her claims of discrimination in both federal and State court the result would be duplicative litigation. Even if this court were to stay this matter rather than abstain and dismiss, application of the principle of res

---

[5] As stated above, Transfer to the Missouri Supreme Court was denied on February 27, 2007, in Brady v. Curators of Univ. of Missouri, 2006 WL 3408210 (Mo. Ct. App. Nov. 28, 2006). Plaintiff has stated that, in the event this holding in Brady should be overruled, she "would likely elect to dismiss her state claim and proceed exclusively under Title VII in federal court." Doc. 11 at 4. While not a consideration in this court's decision regarding the pending Motion to Dismiss, this statement suggests that Plaintiff is not certain regarding the forum in which she would choose to seek redress for her claim of discrimination.

judicata would ultimately result in pointless use of judicial resources. Were this court to retain jurisdiction and either proceed or stay, the result would be that Plaintiff's cause of action would be split in contravention of both State and federal policy. See Friez, 324 F.3d at 581; Roemann, 276 F.3d at 397.

Although Plaintiff has asserted a cause of action pursuant to federal law in the matter before this court, the court finds, for the reasons articulated above, that State court will provide Plaintiff with an opportunity to seek redress of her federal constitutional rights in a manner equal to, if not greater than, the redress which federal court can provide. The court further finds, based on the policy considerations articulated by the Supreme Court in Colorado River, 424 U.S. at 431-32, Younger, 401 U.S. at 431-32, County of Allegheny, 360 U.S. at 188-89, and Cone Memorial Hospital, 460 U.S. at 16, that extraordinary circumstances warranting abstention are present in the matter under consideration. The court finds, therefore, that it should abstain from asserting jurisdiction over Plaintiff's cause of action under Title VII.

## CONCLUSION

For the reasons fully set forth above the court finds that it should abstain from asserting jurisdiction in this matter and that, therefore, Defendant's Motion to Dismiss should be granted. The court further finds that Plaintiff's Motion to Stay should be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss for Lack of Jurisdiction or, in the Alternative to Stay, filed by Defendant State of Missouri, Department of Corrections, is **GRANTED,** in part, **and DENIED,** in part, as moot; Doc. 5

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; Doc. 5

13

**IT IS FURTHER ORDERED** that Defendant's alternative Motion to Stay is **DENIED**, as moot; Doc. 5

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of March, 2007.